942 F.2d 794
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Stanley C. EDWARDS, Defendant-Appellant.
 No. 90-30355.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 1, 1991.
Decided Aug. 16, 1991.
 
 Before EUGENE A. WRIGHT, BEEZER and WIGGINS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Stanley Edwards was charged under the Lacey Act with transporting across states lines animals taken in violation of state law. The animals were taken on the Crow Indian reservation in Montana. Edwards appeals on the theory that Montana cannot regulate hunting on the reservations and therefore that the animals were not taken in violation of state law. We affirm.
 
 
 3
 * Edwards, who is neither an Indian nor a member of any Indian tribe, was charged with violating the Lacey Act, 16 U.S.C. §§ 3372(a), 3373(d)(2),[1] by transporting across state lines two pronghorn antelopes and one black bear taken in violation of the laws of Montana. Edwards was alleged to have violated Montana law by hunting in a closed season and by hunting without a proper license. See Montana Code Ann. §§ 87-3-104, 87-2-103. The crimes were alleged to have occurred on or about April 1988. The parties agree that the animals were taken while Edwards was hunting on land within the boundaries of the Crow Reservation.
 
 
 4
 On July 9, 1990, Edwards moved to dismiss on the ground that the State of Montana lacked jurisdiction to regulate hunting by non-Indians on land within the boundaries of the Crow Reservation and therefore that the state law underlying the Lacey Act charges could not apply to Edwards' conduct. The district court denied the motion and Edwards agreed to plead guilty to count 2 in return for the dismissal of count 1. Edwards reserved the right to appeal the issue of the State's jurisdiction. He was sentenced to a fine of $500, placed on probation for two years, and required to repay the government for the legal fees incurred by his court-appointed attorney.
 
 II
 
 5
 The parties agree that the case most closely on point is New Mexico v. Mescalero Apache Tribe, 462 U.S. 324 (1983). In Mescalero, the Mescalero Apache Tribe (Mescalero Tribe) and the Federal Government jointly conducted a comprehensive program to manage wildlife on the reservation. The Mescalero Tribe brought suit to prevent New Mexico from regulating hunting and fishing by non-Indians on the Mescalero reservation. New Mexico agreed that it could not exercise exclusive jurisdiction, but argued that it could exercise concurrent jurisdiction over nonmembers hunting or fishing on the reservation.
 
 
 6
 The Court held that a state may exercise concurrent jurisdiction over non-Indians hunting or fishing on Indian reservations unless such jurisdiction is pre-empted by the operation of federal law or unlawfully infringes on the right of reservation Indians to make their own laws and be ruled by them. See id. at 324-34 & n. 16. "State jurisdiction is pre-empted by the operation of federal law if it interferes or is incompatible with federal and tribal interests reflected in federal law, unless the state interests at stake are sufficient to justify the assertion of state authority." Id. at 334 (citation omitted).
 
 
 7
 The Court found that state regulation of hunting and fishing on Indian reservations implicates "Congress' overriding objective of encouraging tribal self-government and economic development." See id. at 341; see also id. at 335-36 & n. 17.[2] This objective is based in part on a recognition of the Tribe's authority to regulate the use by members and nonmembers of the lands and resources on its reservation, including wildlife. Id. at 337 (citing Montana v. United States, 450 U.S. 544, 557 (1981)).[3] These interests alone did not preempt concurrent state jurisdiction, however, because the Court found it necessary to examine the tribal regulatory scheme.
 
 
 8
 The simple fact that there existed a tribal regulatory scheme also was not sufficient to preempt state law. The Court noted the conflict between state and tribal hunting and fishing regulations and analyzed the effect of that conflict on federal and tribal interests. Enforcement of the state regulations, which were in numerous instances more restrictive than the tribal regulations, id. at 329, would have "nullif[ied] the Tribe's authority to control hunting and fishing on the reservation." Id. at 338. Additionally, concurrent state jurisdiction would have frustrated the Tribe's efforts, undertaken through its comprehensive regulatory scheme, id. at 328, to address the special needs of the reservation's wildlife resources. Id. at 339-40. Finally, enforcing more restrictive state regulations would have threatened Congress' "overriding objective" of encouraging tribal economic development because the revenue generated by the Tribe's sale of hunting and fishing licenses would be decreased if state regulations were enforced.
 
 
 9
 In the present case, the district court found that at the time Edwards hunted on the Crow reservation, the Tribe had repealed its old Fish and Game Code. A new Code had been "approved" by the Tribe, but no regulations had been promulgated under the new Code.[4] The court concluded that because there were no tribal regulations in force at the time, state jurisdiction over hunting could not have been preempted.
 
 
 10
 If there were no regulations in force, the district court's conclusion was correct. As in Mescalero, the simple fact that Congress intends Indians to be able to control their own resources and economic development does not preempt concurrent state jurisdiction where the Indians have not undertaken to regulate hunting and fishing themselves.
 
 
 11
 Edwards contends, however, that the Crow tribe had not abandoned its regulation of hunting and fishing on the reservation. Section 1 of the new Wildlife Management Code states:
 
 
 12
 It is intended that the hunting and fishing laws of Montana not be applicable to the territory within the exterior boundaries of the Crow Reservation as to either Tribal members or as to non-Tribal members, unless otherwise enacted by the Crow Tribal Council.
 
 
 13
 Section 7 states that until changed, "those hunting and fishing seasons presently in effect shall remain in effect." According to Edwards, this meant that until regulations were promulgated to implement the new Code, the previous hunting regulations remained in effect.
 
 
 14
 Some scholars have read Mescalero as holding that the existence of any tribal regulatory scheme preempts state jurisdiction to enforce even equivalent regulations. See, e.g., Royster & Fausett, Control of the Reservation Environment: Tribal Primacy, Federal Delegation, and the Limits of State Intrusion, 64 Wash.L.Rev. 581, 597-600 & n. 55 (1990). The Court stated that
 
 
 15
 [c]oncurrent jurisdiction would empower New Mexico wholly to supplant tribal regulations. The state would be able to dictate the terms on which nonmembers are permitted to utilize the reservation's resources. The tribe would thus exercise its authority over the reservation only at the sufferance of the State.
 
 
 16
 Mescalero, 462 U.S. at 338.
 
 
 17
 By itself, this language suggests that once the Tribe takes action to regulate its wildlife resources, even equivalent regulation by the state would infringe on tribal interests, presumably by keeping the tribe from ever making its regulations less restrictive. Although this interpretation appears consistent with Congress' desire to promote tribal self-government, it makes superfluous the Court's discussion of the particular effect of the conflict between New Mexico law and the tribal regulations on federal and tribal interests. See id. at 338-40. This whole discussion was unnecessary if any tribal regulatory scheme automatically preempts state regulation.
 
 
 18
 We conclude, therefore, that concurrent jurisdiction is preempted only to the extent that the specific state law in question would actually interfere with the relevant federal and tribal interests. If it would not, the state may exercise jurisdiction. If the tribe then alters its regulations, the preemption analysis begins again. Our interpretation is consistent with the Supreme Court's statement in an earlier case that "[e]nactments of the Federal Government passed to protect and guard its Indian wards only affect the operation within the [reservation] of such state laws as conflict with the federal enactments." Moe v. Confederated Salish & Kootenai Tribes, 425 U.S. 463, 483 (1976).
 
 
 19
 In the present case, unlike in Mescalero, there is no conflict between the Indian regulations Edwards alleges to have been in force and the state law being enforced. The old tribal hunting regulations prohibited non-members of the Crow tribe from hunting or fishing on the reservation. Therefore, even if those regulations were in effect when Edwards hunted, there was no substantive conflict between the tribal regulations and state law.
 
 
 20
 Where there is no conflict between state law and tribal regulations, there is no interference with the federal and tribal interest in tribal self-government, tribal regulation of wildlife resources, or development of tribal independence. State regulations that simply mirror those of the Tribe do not interfere with the Tribe's authority to control hunting or to manage tribal resources. Nor do such regulations discourage activity the Tribe is attempting to encourage.
 
 III
 
 21
 The judgment of the district court is AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3
 
 
 [1]
 16 U.S.C. § 3372(a) (1988) provides:
 It is unlawful for any person--
 * * *
 (2) to import, export, transport, sell, receive, acquire, or purchase in interstate or foreign commerce--
 (A) any fish or wildlife taken, possessed, transported, or sold in violation of any law or regulation of any State or in violation of any foreign law....
 16 U.S.C. § 3373(d)(2) (1988) provides:
 Any person who knowingly engages in conduct prohibited by any provision of this chapter ... and in the exercise of due care should know that the fish or wildlife or plants were taken, possessed, transported, or sold in violation of, or in a manner unlawful under, any underlying law, treaty or regulation shall be fined not more than $10,000, or imprisoned for not more than one year, or both....
 
 
 [2]
 An example of this commitment is found in 25 U.S.C. § 1451, which states that it is the policy of Congress "to help develop and utilize Indian resources, both physical and human, to a point where the Indians will fully exercise responsibility for the utilization and management of their own resources and where they will enjoy a standard of living from their own productive efforts comparable to that enjoyed by non-Indians in neighboring communities." The Court stated that this statute demonstrated Congress' intent to preempt state regulation of hunting and fishing on reservations." See Mescalero, 462 U.S. at 340 n. 25; see also id. at 335 n. 17 (citing other statutes establishing this commitment)
 The Lacey Act itself protects the authority of Indians to regulate the wildlife on their reservations by making it a violation "to import, export, transport, sell, receive, acquire, or purchase any fish or wildlife or plant taken, possessed, transported, or sold ... in violation of any Indian tribal law." 16 U.S.C. § 3372(a)(1).
 
 
 [3]
 The Court cited a number of statutes, including 18 U.S.C. § 1162, which, while granting States criminal jurisdiction over Indian reservations in certain circumstances, specifically provides that States may not " 'deprive any Indian or any Indian tribe, band, or community of any right, privilege, or immunity afforded under Federal treaty, agreement, or statute with respect to hunting, trapping, or fishing or the control, licensing or regulation thereof.' " Mescalero, 462 U.S. at 337 & n. 21 (quoting 18 U.S.C. § 1162(b) (emphasis added by the Court))
 
 
 [4]
 This point is conceded by both parties